ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV -7 2013

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

STEPHANIE CAMPEAU and )
MARYELLEN C. CAMPEAU as )
Administrator of the Estate of )
BRIAN RANDALL CAMPEAU, )
)
Plaintiffs, )
)
v. )
) Civil Action No.
UNITED STATES OF AMERICA, )
) 1:13-CV-3682
Defendant. )

-MHS

# COMPLAINT

Plaintiffs, by counsel, for their cause of action against Defendant allege and aver as follows:

## Jurisdiction and Venue

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2. In compliance with 28 U.S.C. § 2675, Plaintiff Stephanie Campeau ("Mrs. S. Campeau") filed her notice of administrative claim with the appropriate administrative agency – the Department of Veterans Affairs (the "VA") – on July

1

3, 2012. Mrs. S. Campeau subsequently amended her administrative claim on April 24, 2013. Plaintiff Maryellen Campeau ("Mrs. M. Campeau") filed her notice of administrative claim with the VA on July 3, 2012. The VA has not acted on Mrs. S. Campeau's claim. The VA denied Mrs. M. Campeau's claim on April 15, 2013.

3. The six month period set forth in 28 U.S.C. § 2675(a) has expired with regard to Mrs. S. Campeau's claim.

4. Accordingly, Plaintiffs' claims are ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1402(b) because the cause of action arose within the Northern District of Georgia, at the Atlanta VA Medical Center located in Decatur, Georgia (the "Atlanta VAMC").

## General Allegations

6. At all times relevant to this action, Brian R. Campeau ("Mr. Campeau") and Mrs. S. Campeau were legally married and resided in Sandy Springs, Georgia.

7. At all times relevant to this action, the defendant United States of America owned and operated the Atlanta VAMC.

8. At all times relevant to this action, the agents, servants, employees and personnel of the defendant United States of America were acting within the course and scope of their employment in providing medical care and treatment to Mr. Campeau, a veteran of the United States Armed Forces entitled to such care and treatment.

9. On July 22, 2010, Mr. Campeau was admitted to the Atlanta VAMC for treatment of bipolar disorder and depression. He remained an inpatient at the Atlanta VAMC until the time of his death on August 7, 2010.

10. At the time of Mr. Campeau's admission to the Atlanta VAMC on July 22, 2010, his VA health care providers knew or should have known of his medical history, which included severe obstructive sleep apnea and morbid obesity.

11. On August 2, 2010, an attempt to administer electroconvulsive treatment ("ECT") to Mr. Campeau was aborted. VAMC medical records indicate the decision to abort the procedure was multi-factorial, including a period of oxygen desaturation, labile blood pressure, and the patient's inability to relax fully enough despite administration of multiple doses of anesthesia induction medications.

12. On August 3, 2010 ("August 3"), Mr. Campeau was intubated and underwent successful ECT.

13. Following ECT, Mr. Campeau was extubated by anesthesia personnel. Immediately following extubation, Mr. Campeau became hypoxic, confused and combative. Anesthesia personnel initiated bi-level positive airway pressure ventilation ("BiPAP").

14. Mr. Campeau was transported from the ECT procedure room to the Post-Anesthesia Care Unit ("PACU") at approximately 12:40 PM on August 3. While in PACU, Mr. Campeau exhibited increased respiratory effort, a rapid heart rate, could not achieve an oxygen saturation level above 94% even with the use of the BiPAP, and experienced periods of hypoxemia with oxygen saturation levels dropping below 90%.

15. At approximately 12:59 PM on August 3, a chest x-ray was done which revealed several abnormalities, including extensive perihilar infiltrates and distended pulmonary vasculature.

16. At approximately 2:45 PM on August 3, Mr. Campeau told a PACU staff member that his chest felt "tight" and that he "can't breath[e]."

17. At approximately 5:15 PM on August 3, Mr. Campeau was transported from PACU to the Surgical Intensive Care Unit ("SICU") for continued observation and treatment.

18. Mr. Campeau continued to require BiPAP in order to maintain oxygen saturation levels above 90% after his arrival in the SICU. He also continued to exhibit rapid heart and respiratory rates.

19. On August 3 at approximately 5:34 PM, Mr. Campeau told Mahdi Chowdhury, M.D. ("Dr. Chowdhury") that his "lungs feel heavy."

20. At approximately 6:28 PM on August 3, Kunjannamma J. Simon, RN ("Nurse Simon") noted that she had "placed [Mr. Campeau] on 100% non-rebreather mask ("NRB")."

21. On August 3 at approximately 7:51 PM, Nurse Simon noted: "While on 100% nonrebreather patient was maintaining sat 87-89% with tachypnea, MD notified and resumed C-PAP, now sat reading 97% but continue to be tachypnic."

22. At approximately 8:00 PM on August 3, Lizabelle Johnston, RN ("Nurse Johnston"), noted that Mr. Campeau was anxious and his breathing was labored. Mr. Campeau told Nurse Johnston that he felt short of breath.

23. At approximately 8:14 PM on August 3, a chest x-ray revealed "worsening perihilar infiltrates, most likely worsening pulmonary edema."

24. On August 3 at approximately 9:00 PM, Nurse Johnston noted that Mr. Campeau was exhibiting increased anxiety and irritability. She administered Lorazepam as ordered.

25. At approximately 10:00 PM on August 3, Mr. Campeau told Nurse Johnston that he wanted to speak to the doctor and said: "Put the tube down, I can't breath[e]." Nurse Johnston contacted an unknown VAMC physician and received orders to medicate Mr. Campeau with Haldol, which she did.

26. At approximately 12:01 AM on August 4, 2010 ("August 4"), Nurse Johnston noted that Mr. Campeau was anxious and continued with labored breathing and coarse breath sounds. In addition, Nurse Johnston noted at this time that Mr. Campeau had a temperature of 101.7.

27. On August 4 at approximately 3:00 AM, Nurse Johnston noted that Mr. Campeau was anxious with a respiratory rate of 28-36. Dr. Chowdhury was called and came to the bedside. He ordered that Mr. Campeau be placed on NRB, which was done.

28. At approximately 3:40 AM on August 4, Mr. Campeau complained of feeling short of breath. Nurse Johnston noted that his oxygen saturation level was in the 90-92% range at this time and called for a respiratory therapist.

29. Yei L. Gorgor, RRT ("RRT Gorgor") evaluated Mr. Campeau and noted that within 30 minutes of being placed on the NRB the patient "started complaining that he cannot breath[e] with respiratory rate of 38-50." RRT Gorgor removed the NRB and put Mr. Campeau back on BiPAP.

30. On August 4 at approximately 4:15 AM, Mr. Campeau complained of increased shortness of breath and anxiety. Nurse Johnston medicated him with Lorazepam.

31. At approximately 4:30 AM on August 4, Mr. Campeau told Dr. Chowdhury that he was unable to "keep breathing at this rate and would rather be on a mechanical ventilator."

32. Nurse Johnston noted at 4:45 AM on August 4 that Mr. Campeau's condition had deteriorated and Dr. Chowdhury recommended intubation. A respiratory code was called at this time because Mr. Campeau had become severely hypoxic, with oxygen saturation levels into the 50's.

33. A VAMC respiratory therapist identified only by the initials "LBB" came to Mr. Campeau's bedside to intubate him. LBB began those efforts at 4:42 AM on August 4. The code was called at 4:45 AM on August 4.

34. The "CPR Flow Sheet" in the VAMC records ("the Flowsheet") states that LBB made 11 separate attempts to intubate Mr. Campeau between 4:42 AM and 5:45 AM on August 4, a period of 63 minutes.

35. The Flowsheet indicates that during this 63-minute period, Mr. Campeau's oxygen saturation levels dipped into the 30's and never reached into the 80's.

36. At approximately 5:45 AM on August 4, Marleah E. Oliver, CRNA ("Anesthetist Oliver") arrived in Mr. Campeau's SICU room and successfully intubated him with the use of a glydoscope.

37. A chest x-ray performed at approximately 5:45 AM on August 4 found "interval development of perihilar air space consolidations." The chest x-ray report states: "Finding is worrisome for flash pulmonary edema vs. ARDS."

38. At 6:28 AM on August 4, Dr. Chowdhury noted in Mr. Campeau's VAMC medical records that: "The anesthesiologist was called and in the meantime, respiratory therapist had attempted to place an ET tube. However, due

to the patient's anatomy, he had a very difficult airway and we were unsuccessful at ET tube placement until anesthesia arrived, at which point a[n] ET tube was placed."

39. Mr. Campeau continued to experience fever, tachycardia, hypotension requiring vasopressors, and difficulties maintaining adequate oxygen saturation levels even after intubation. VAMC medical records indicate that his treating physicians believed him to have developed hospital-acquired pneumonia and/or acute respiratory distress syndrome ("ARDS").

40. Mr. Campeau was transported from SICU to the Medical Intensive Care Unit ("MICU") at approximately 5:47 PM on August 4.

41. On August 5, 2010, Mr. Campeau's fever continued with temperatures exceeding 106 degrees Fahrenheit. In addition, he experienced continuing respiratory distress despite intubation (oxygen saturation levels into the 70's), tachycardia, generalized edema, hypotension, fluid overload, and other problems.

42. On August 5, 2010, Dr. Chowdhury noted that Mr. Campeau had hypoxemic respiratory failure, likely caused by ARDS, as well as septic shock of unclear etiology.

43. On August 5, 2010, Dr. Chowdhury and Ashish J. Mehta, M.D. ("Dr. Mehta") discussed Mr. Campeau's clinical condition with his family, including Plaintiffs. Dr. Mehta authored a "Communication of Adverse Event" note memorializing this discussion, in which the family was told that it was unlikely "we will be able to prove exactly what caused the respiratory failure."

44. Mr. Campeau's medical condition continued to decline. On the afternoon of August 7, 2010, his oxygen saturation level and blood pressure dropped to life-threatening levels. Mr. Campeau sustained a cardiac arrest and a code was called. Despite resuscitation efforts, he could not be revived. Mr. Campeau was pronounced dead at 5:08 PM on August 7, 2010.

45. An autopsy was performed on Mr. Campeau at the Atlanta VAMC. The cause of his death was determined to be respiratory failure with subsequent cardiac arrest.

### **Negligence**

46. Plaintiffs restate and re-allege paragraphs 1 through 45 as if fully stated herein.

47. Plaintiffs allege that the agents, servants, or employees of the United States of America at the Atlanta VAMC, while acting within the scope of their employment, violated the applicable standards of medical care by:

(a) Negligent and premature extubation of Mr. Campeau following ECT on August 3, 2010;

(b) Negligent failure to re-intubate Mr. Campeau from approximately 4:00 PM on August 3, 2010, through approximately 5:45 AM on August 4, 2010, a period of more than 13 hours;

(c) Negligent failure to appropriately intubate Mr. Campeau between 4:42 AM and 5:45 AM on August 4, 2010, a period of 63 minutes;

(d) Negligent failure to have qualified anesthesia personnel available to intubate Mr. Campeau in the early morning hours of August 4, 2010; and

(e) Committing other negligent acts or omissions before and/or during the course of the treatment referenced above as will be developed through additional factual investigation, expert review, and discovery.

48. Plaintiffs assert that the negligence described above proximately caused the death of Brian Randall Campeau on August 7, 2010, at the age of 40.

## Count I: Survival Action

49. Plaintiffs restate and re-allege paragraphs 1 through 48 as if fully stated herein.

50. As a direct and proximate result of the aforementioned negligence of agents and/or employees of the United States, Brian Randall Campeau was caused

11

to suffer physical injury, pain, mental anguish and physical disability. Upon his death, expenses for funeral and burial were also incurred.

51. Accordingly, Plaintiff Maryellen C. Campeau, the Administrator of the Estate of Brian Randall Campeau, claims the following damages:

(a) Compensation for the extreme pain, suffering, and mental anguish of Brian Randall Campeau prior to his death;

(b) Compensation for funeral and burial expenses; and

(c) Compensation for any other damages sustained by Brian Randall Campeau as a proximate result of the Defendant's negligent acts.

52. For these damages, Plaintiff Maryellen C. Campeau, the Administrator of the Estate of Brian Randall Campeau, deceased, demands $1,000,000.00 (One Million and 00/100 Dollars) in compensation.

## Count II: Wrongful Death

53. Plaintiffs restate and re-allege paragraphs 1 through 52 as if fully stated herein.

54. As a direct and proximate result of the aforementioned negligence of agents and/or employees of the United States, Brian Randall Campeau died on August 7, 2010. Accordingly, Plaintiff Stephanie Campeau claims damages amounting to the "full value" of the decedent's life, including:

(a) His loss of society and companionship;

(b) Income loss resulting from the death of Brian Randall Campeau;

(c) The value of the lost household and domestic services previously performed by Brian Randall Campeau;

(d) Any other pecuniary loss proximately resulting from his death; and

(e) The intangible value of his life and any other components of the full value of his life.

55. For these damages, Plaintiff Stephanie Campeau demands $4,000,000.00 (Four Million and 00/100 Dollars) in compensation.

56. Submitted herewith is the Affidavit of Michael G. Seneff, M.D. This affidavit includes the opinions of a well-qualified expert competent to testify on the matters at issue in this case and sets forth specifically one or more negligent acts and/or omissions claimed to exist and the factual basis for each such claim. This affidavit would fulfill the pleading requirements of Georgia law as set forth at O.C.G.A. Sec. 9-11-9.1, but that law is not applicable to the claims in this lawsuit which arise under federal law. This expert affidavit is submitted only out of an abundance of caution and to demonstrate a good faith and substantial factual basis for the Plaintiffs' claims in this matter.

WHEREFORE, Plaintiffs respectfully request that this Court grant judgment in their favor against Defendant as prayed for above and award them such other further relief as is just and equitable under the circumstances.

Respectfully submitted,

STEPHANIE CAMPEAU and
MARYELLEN C. CAMPEAU,
Administrator of the Estate of BRIAN
RANDALL CAMPEAU

By: _____
Dale C. Ray, Jr.
Georgia Bar No. 596095
Fain, Major & Brennan, P.C.
100 Glenridge Point Parkway, Suite 500
Atlanta, GA 30342
(404) 688-6633
(404) 420-1544 – Facsimile
dray@fainmajor.com