IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHANIE CAMPEAU,

       Plaintiff,

    v.                            1:13-cv-3682-WSD

UNITED STATES OF AMERICA,

       Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant United States of America's ("Defendant") Motion for Reconsideration [27] of the Court's July 21, 2014, Order [25] denying Defendant's Motion to Dismiss [14] the Complaint [1].

## I.  BACKGROUND

This action arises from the August 7, 2010, death of Brian R. Campeau ("Decedent") at the Department of Veterans Affairs ("VA") Medical Center ("VA Medical Center"), in Atlanta, Georgia, following complications experienced during an attempted electroconvulsive treatment ("ECT").  Plaintiff Stephanie L. Campeau ("Stephanie" or "Plaintiff") is Decedent's wife, and Maryellen C. Campeau ("Maryellen") is Decedent's mother and the Administrator ("Administrator") of Decedent's estate (the "Estate").

A.  Facts

On July 2, 2012, counsel for Stephanie and Maryellen ("Counsel") submitted

to the VA a Standard Form 95 ("SF-95"), alleging that negligent medical care

Decedent received at the VA Medical Center caused his death.  The SF-95 states:

| CLAIM FOR DAMAGE INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the Instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | | FORM APPROVED OMB NO. 1105-0008 EXPIRES: 4-30-88 |
|---|---|---|---|
| 1. Submit to Appropriate Federal Agency: Office of Regional Counsel (316/02) Department of Veterans Affairs 1700 Clairmont Road Decatur, GA 30033-4032 | | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) Maryellen C. Campeau, Administrator of the Estate of Brian R. Campeau 2090 S. Ringle Road Vassar, MI 48768 | |

| 3. TYPE OF EMPLOYMENT □ MILITARY □ CIVILIAN | 4. DATE OF BIRTH 10/10/1969 (Decedent) | 5. MARITAL STATUS Married | 6. DATE AND DAY OF ACCIDENT August 3, 2010 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons or property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

On July 22, 2010, Brian R. Campeau was admitted to the Atlanta VA Medical Center for treatment of bipolar disorder and depression. Electroconvulsive therapy (ECT) was considered as a method of treatment for Mr. Campeau, and medical work-up commenced. Mr. Campeau had numerous risk factors for anesthesia and ECT, including, but not limited to, morbid obesity (BMI 50.4), long history of tobacco use, and severe obstructive sleep apnea. On August 2, 2010, Mr. Campeau was transported to the ECT procedure room. Shortly after induction of anesthesia, the patient's oxygen saturation level dropped to dangerous levels and his blood pressure was labile. The ECT was aborted. Psychiatry progress notes indicate that the patient's mental health condition was improving and he was no longer experiencing suicidal ideation. Nevertheless, and in spite of his demonstrated respiratory difficulties with anesthesia, less than 24 hours later Mr. Campeau was again transported to the ECT procedure room. This time, he was intubated for anesthesia and ECT was administered. Upon being wakened from anesthesia, Mr. Campeau was again hypoxic and required CPAP mask for oxygenation. Pulmonary consult was ordered and Mr. Campeau was transferred to the ICU later that day. Unfortunately, his respiratory status continued to decline and by the early morning hours of August 4, 2010, Mr. Campeau required intubation. Imaging studies revealed diffuse bilateral infiltrates consistent with Adult Respiratory Distress Syndrome (ARDS). He required maximal ventilator support and pressors for hypotension. Three days later, on August 7, 2010, a code was called as Mr. Campeau's blood oxygen levels and blood pressure continued to drop. Resuscitation efforts were unsuccessful and Mr. Campeau was pronounced dead at 1708 on August 7, 2010. He was 40 years old.

| 9. | PROPERTY DAMAGE | | |
|---|---|---|---|
| NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State and Zip Code) N/A | | | |
| BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)   N/A | | | |

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|
| STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT. Please refer to #8, above, Basis of Claim; VA negligence as described caused the death of Brian R. Campeau, resulting in economic and non-economic losses to his Estate. | |

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, street, city, State and Zip Code) | |
| Maryellen C. Campeau, Mother of Decedent and Administrator of his Estate | 2090 S. Ringle Road, Vassar, MI 48768 | |
| Stephanie L. Campeau, Widow of Brian R. Campeau | 175 Millwood Street, Caro, MI 48723 | |
| Health care providers of Brian R. Campeau at the Atlanta VA Medical Center | 1670 Clairmont Road, Decatur, GA 30033 | |

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE N/A | 12b. PERSONAL INJURY $5,000,000 | 12c. WRONGFUL DEATH N/A | 12d. TOTAL (Failure to specify may cause forfeiture of your rights) $5,000,000 |

| I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM | | | |
|---|---|---|---|
| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side) Attorney for Claimant Brewster S. Rawls | | 13b. Phone number of signatory (804) 782-0607 | 14. DATE OF CLAIM July 2, 2012 |

(SF-95 [15.1]).[1]

On September 25, 2012, the VA sent to Counsel a letter, titled "Re: Administrative Tort Claim of Maryellen Campeau."  ([15.2] at 2).  The letter "acknowledges receipt of your client's tort claim seeking $5,000,000 for allegations that [Maryellen's] son died as a result of negligent care he received at the Atlanta VA Medical Center," and requests additional information listed on an enclosed copy of 28 C.F.R. § 14.4.  The letter does not request any specific information, and the enclosure lists generally the documents requested for claims based on death, personal injury, and property damage.  (Id. at 3-4).

On November 14, 2012,[2] Counsel sent to the VA a letter, which states:

> With regard to economic losses, I have enclosed our initial analysis of those losses, premised upon elimination of VA and Social Security disability benefits, as well as funeral expenses.  As you can see, based on Brian's relatively young age, the income loss resulting from his premature death is quite significant.  If and when the case is litigated, we expect that an economist would likely come up with a slightly higher figure than that proposed in the enclosed statement, and would add loss of household services.

---

[1]     Counsel also submitted to the VA, with the SF-95, two (2) representation agreements, one signed by Maryellen and one signed by Stephanie, which state: "This is to certify that I have retained the services of the law firm of Rawls, McNelis & Mitchell, P.C., to represent me in a claim against the United States government.  I further authorize the attorneys of that firm to sign and submit such claim on my behalf."  ([15.1] at 7-9).

[2]     Counsel stated that they received the VA's September 15, 2012, Letter on October 29, 2012, because of "mail delays," and a change in Counsel's address.

(Nov. 14, 2012, Letter [15.3] at 1).  The preliminary statement of economic losses, using the life expectancy from the Social Security Administration's Life Table, estimated the economic loss as follows:

Estate of Brian R. Campeau
Preliminary Statement of Economic Losses

| | |
|---|---|
| **Loss of VA Disability Benefits**<br><br>. . . These benefits were paid retroactively in the amount of $238.67 per month until the date of Mr. Campeau's death, but did not transfer to his wife at the time of his death.<br><br>Annual loss of VA disability benefits = $2,864.04<br><br>    $2,864.04 x 37.84 years = $108,375.24 | $108,375.27 |
| **Loss of Social Security Disability Benefits**<br><br>. . . Had he survived, he would have received $2,069 per month in Social Security disability benefits.<br><br>Annual loss of Social Security disability benefits = $24,828<br><br>    $24,828 x 37.84 years = $939,491.52 | $939,491.52 |
| **Funeral Expenses**<br><br>. . . | $7,099.80 |
| **TOTALS** | $1,054,966.60 |

(Nov. 14, 2012, Letter at 6).  Counsel also submitted an opinion of a critical care expert who reviewed Decedent's medical records and opines:

> [T]he care rendered to Mr. Campeau did not meet minimum standards
> of care and the deviations from the standard of care were the proximate
> cause of his death.
>
> . . .
>
> . . . Specifically, there was a several hour delay in intubating Mr.
> Campeau on August 3-4, and when the decision finally was made,
> there were not qualified personnel available to perform the procedure.
> . . . It was the events during the 60 minute attempts to intubate that Mr.
> Campeau suffered the anoxic and pulmonary injuries that directly led
> to his death. . . .

(Id. at 4-5).

On November 26, 2012, the VA sent to Counsel a letter, which

"acknowledges receipt of [Counsel's] November 14, 2012, correspondence"

including the "analysis of economic losses resulting from Mr. Campeau's death"

and "critical care expert review of the care provided to Mr. Campeau by VA

Medical Center personnel in the time period relevant to this claim."  (Nov. 26,

2012, Letter [14.2 at 41]).  The November 26, 2012, Letter states:

> Your initial claim, which was received in this office on July 3, 2012,
> alleged that Mr. Campeau's providers were negligent in performing
> [ECT] on Mr. Campeau in August 2012.  Your expert has now opined
> that Mr. Campeau's providers, including providers in the VAMC's
> intensive care unit, were negligent in their treatment of Mr. Campeau
> *after* his ECT therapy had been completed.
>
> This office regards the expert review and the opinions contained
> therein as an amendment to Ms. Campeau's claim. . . .

(Id.).

5

On December 10, 2012, Counsel responded to the VA's November 26th
Letter and submitted an Amended SF-95, to "address the concerns raised in [the
VA's] letter regarding the claimant's allegations."  (Dec. 10, 2012, Letter [14.2 at
43]).  The Amended SF-95 states:

| 1. Submit to Appropriate Federal Agency: | | | 2. Name, Address of claimant and claimant's personal representative, if any. | |
|---|---|---|---|---|
| **Office of Regional Counsel (316/02)**<br>**Department of Veterans Affairs**<br>**1700 Clairmont Road**<br>**Decatur, GA 30033-4032** | | | (See instructions on reverse.) (Number, street, city, State and Zip Code)<br>**Maryellen C. Campeau, Administrator of the Estate of Brian R.**<br>**Campeau**<br>**2090 S. Ringle Road**<br>**Vassar, MI 48768** | |
| 3. TYPE OF EMPLOYMENT<br>□ MILITARY □ CIVILIAN | 4. DATE OF BIRTH<br>**10/10/1969**<br>(Decedent) | 5. MARITAL STATUS<br>**Married** | 6. DATE AND DAY OF ACCIDENT<br>**See #8, Basis of Claim** | 7. TIME (A.M. OR P.M.) |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons or property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

**On July 22, 2010, Brian R. Campeau was admitted to the Atlanta VA Medical Center for treatment of bipolar disorder and depression. Electroconvulsive therapy (ECT) was considered and planned for treatment. On August 2, 2010, Mr. Campeau was transported to the ECT procedure room. Shortly after induction of anesthesia, the patient experienced a brief drop in his oxygen saturation level; for this reason, ECT was aborted. On August 3, 2010, Mr. Campeau was taken again to the ECT procedure room. This time, he was intubated and ECT was successfully administered. Afterward, he was extubated by anesthesia personnel. He immediately became hypoxic, delirious, and agitated. Despite BIPAP ventilation, Mr. Campeau remained moderately hypoxic and was transferred to MICU on the afternoon of August 3, 2010. Overnight, the patient continued to struggle to breathe and finally efforts were made to re-intubate him in the early morning hours of August 4, 2010. A respiratory therapist attempted the difficult intubation for approximately one hour until a CRNA arrived and was able to successfully intubate Mr. Campeau. During this time, the patient suffered oxygen deprivation. Mr. Campeau was subsequently diagnosed with adult respiratory distress syndrome (ARDS), hyperpyrexia, and anoxic brain injury.  He ultimately died on August 7, 2010. He was 40 years old.**

**Continued on attached page.**

| 9. | PROPERTY DAMAGE | | | |
|---|---|---|---|---|
| NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State and Zip Code)<br>N/A | | | RECEIVED<br>DEC 1 3 2012 | |
| BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)   N/A | | | | |
| 10. | PERSONAL INJURY/WRONGFUL DEATH | | | |

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

**Please refer to #8, Basis of Claim; VA negligence as described caused the death of Brian R. Campeau, resulting in economic and non-economic losses to his Estate.**

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, street, city, State and Zip Code) | |
| **Maryellen C. Campeau, Mother of Decedent and Administrator of his Estate** | **2090 S. Ringle Road, Vassar, MI 48768** | |
| **Stephanie L. Campeau, Widow of Decedent** | **175 Millwood Street, Caro, MI 48723** | |
| **Health care providers of Brian R. Campeau at the Atlanta VA Medical Center** | **1670 Clairmont Road, Decatur, GA 30033** | |

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH<br>**$5,000,000** | 12d. TOTAL (Failure to specify may cause forfeiture of your rights)<br>**$5,000,000** |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side) | | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|---|
| | **Attorney for Claimant**<br>**Brewster S. Rawls** | **(804) 782-0607** | **AMENDED**<br>**December 10, 2012** |

6

(Amended SF-95 [14.2 at 45-46]).[3]  Counsel also told the VA:

> I would like to explain our view of this claim . . . . As you know, Mr. Campeau had suffered with depression for much of his life.  In spite of this, he remained determined to live and had recently married.  He was very hopefully that the ECT would improve his condition and the overall quality of his life.  Instead, according to credible experts, Brian Campeau, age 40, died due to gross negligence on the part of VA providers.

> Second, the economic losses associated with Brian's death are, as you have seen, likely in excess of one million dollars.  The non-economic losses, primarily the extensive pain and suffering to Brian's young widow and mother resulting from his socking and tragic loss, are equally substantial. . . .

(Id.).

On April 15, 2013, the VA sent Counsel a letter (the "Denial Letter"),

denying the "Administrative Tort Claim(s) of the Estate of Brian Randall Campeau

and/or Maryellen Campeau, Administrator of the Estate of Brian R. Campeau."

(Denial Letter [15.4]).  The Denial Letter states:

> . . . Our investigation, which included review of medical opinions from specialists not involved in [Decedent's] care, did not find any negligent or wrongful act or omission on the part of a [VA] employee acting within the scope of his or her employment that caused personal injury to, or resulted in the death of Brian Campeau, at the [ ] VA Medical Center following elective ECT treatment.

> It is also our determination that "Maryellen C. Campeau, as Administrator of the Estate of Brian R. Campeau" is not a proper party claimant to file a wrongful death claim under Georgia law, and,

---

[3]     The "attached page" referenced in the Basis of Claim is not in the record.

> therefore, to the extent that the claim dated July 2, 2012 attempted to assert a wrongful death claim (noting that the claim form indicated "Wrongful Death N/A") or the later-received claim dated December 10, 2012 asserted a wrongful death claim, denial is also made on the grounds that same were filed by an individual who is not a proper party claimant.  Additionally, the wrongful death claim dated December 10, 2012, and received by VA on December 13, 2012, is denied as untimely, and barred by the two-year statute of limitations applicable to FTCA claims.

(April 15, 2013, Letter at 1).

On April 23, 2013, Counsel responded to the VA's Denial Letter, noting that it "remained silent as to the claim that was also asserted on behalf of Stephanie Campeau, the surviving spouse of [Decedent], in July 2012."  (April 23, 2013, Letter [15.5] at 1).  Counsel stated that their "original filing in July 2012 [] which asserted a claim on behalf of both the Estate and Stephanie Campeau," but observed that communication with the VA

> always focused exclusively on the Estate's claim and never mentioned nor requested additional information regarding Stephanie['s] claim.

> Accordingly, our understanding is there has been no final disposition as to Stephanie['s] claim as there has not been any final agency action regarding that claim . . . [which] remains pending and amendable.

(Id.).  Counsel also submitted another Amended SF-95 ("Second Amended SF-95"), which lists Stephanie as the "Claimant," includes the same "Basis of Claim" statement as the Amended SF-95, and also states:

**Attachment to Amended SF-95 of Stephanie Campeau**

Claimant alleges that VA health care providers were negligent in their treatment of Brian R. Campeau in the following respects: (a) unnecessary cancellation of ECT procedure on 8/2/10, thereby exposing the patient to anesthesia and resulting complications the following day; (b) premature extubation following ECT on 8/3/10; (c) failure to re-intubate until the early morning hours of 8/4/10; (d) failure to appropriately re-intubate the patient for approximately one hour once the decision to re-intubate was finally made; (e) failure to provide appropriate and effective treatment for the patient's pulmonary injuries and hyperpyrexia; and (f) committed other negligent acts or omissions before and/or during the course of the treatment referenced above as will be developed through additional factual investigation, expert review, and discovery. This negligence resulted in the death of Brian R. Campeau on August 7, 2010.

(Second Amended SF-95 [15.5] at 5-6).  The Second Amended SF-95 states that

"VA negligence as described caused the death of Brian R. Campeau, resulting in

economic and non-economic losses to his widow, Stephanie Campeau," and that the

"Amount of Claim" is $5,000,000, for Wrongful Death.  (Id.).

On May 17, 2013, the VA sent Counsel a letter acknowledging receipt of the

"Administrative Tort Claim of Stephanie Campeau regarding Deceased Veteran

Brian Randall Campeau," and stating:

> It is noted that your April 23, 2013 [L]etter states that your client
> Stephanie Campeau previously filed a claim with this office in July
> 2012.  Our records show no prior claim by Stephanie [] regarding
> [Decedent's] death, only the prior claims filed by your office in July
> and December 2012 on behalf of Maryellen [], Administrator of the
> Estate []; in those filings, your client Stephanie [] is designated as a
> witness, not as a claimant.  (As you know, Ms. Maryellen Campeau's
> claims were denied by letter dated April 15, 2013.)  Therefore, your
> filing of April 24, 2013 is being treated as a new claim, not as an
> amendment to any prior claim.

(May 17, 2013, Letter [15.6] at 1).

9

On May 22, 2013, Counsel sent the VA a letter disputing the "characterization of our April 24, 2013 filing as a 'new claim' versus an 'amendment,'" including because Stephanie's authorization for representation was submitted with the first SF-95, and the claim narrative and other supplemental materials "should have at least prompted the VA to raise the question as to whether Stephanie [] was in fact asserting a wrongful death claim if it had any doubt on the subject." (May 22, 2013, Letter [15.7]).

On November 13, 2013, the VA denied the "Administrative Tort Claim of Stephanie Campeau regarding Deceased Veteran Brian Randall Campeau" because

> . . . [its] investigation, which included review of medical opinions from specialists not involved in his care, did not find any negligent or wrongful act or omission on the part of a [VA] employee . . . that caused the death of [Decedent].
>
> Further, Stephanie Campeau's SF-95 for wrongful death was received in this office on April 24, 2013, more than two years after Brian Campeau's death on August 7, 2010.  It is therefore barred by the two-year statute of limitations applicable to FTCA claims.  As you were advised in our letter acknowledging this claim, our office has no record of any prior claim filed by Stephanie Campeau, although she was designated as a witness in the claims filed by the personal representative of Mr. Campeau's estate, which claims were denied April 15, 2013.

(Nov. 13, 2013, Letter [14.2 at 60]).

B.   Procedural History

On November 7, 2013, Plaintiff and the Administrator filed their Complaint [1] in this action, alleging that Decedent's death was proximately caused by the negligent medical care provided to him at the VA Medical Center.  In Count I, the Administrator asserts a survival action on behalf of the Estate, seeking $1,000,000 in compensation for (i) the extreme pain and suffering suffered by Decedent prior to his death, (ii) funeral and burial expenses, and (iii) any other damages caused by Defendant's alleged negligence.  In Count II, Plaintiff asserts a wrongful death claim, seeking $4,000,000 in compensation for the full value of Decedent's life, including pecuniary and intangible losses that proximately resulted from his death and were caused by Defendant's alleged negligence.

On January 13, 2014, Defendant moved to dismiss the Complaint for lack of subject matter jurisdiction, arguing that Plaintiff and the Administrator failed to comply with the jurisdictional prerequisites under the Federal Tort Claims Act ("FTCA").[4]

On January 27, 2014, the Administrator voluntarily dismissed her claim.

On July 21, 2014, the Court denied Defendant's Motion to Dismiss, having

---

[4]   Defendant argued that the Administrator's personal injury claim was untimely, under 28 U.S.C. § 2401(b), because the VA denied the personal injury claim on April 15, 2013, and the Administrator failed to file suit, within six months, after the claim was denied on the merits.

concluded that the SF-95 "(1) gave the [VA] written notice of [Plaintiff's wrongful death claim sufficient] to enable the agency to investigate; and (2) stated a sum certain as to the value of the [wrongful death claim]."  (July 21st Order at 16).  The Court found that the SF-95 detailed the time, place, and manner of Decedent's death at the VA Medical Center, and contained all the information that the VA needed to be on notice of the potential theories of liability and the facts upon which liability could be asserted by a potential claimant, including Plaintiff as Decedent's surviving spouse.  The Court found that the VA actually investigated a wrongful death claim and denied the claim by concluding that its agents and employees did not commit medical malpractice.

Relying on Brown v. United States, 838 F.2d 1157 (11th Cir. 1988), the Court rejected the VA's "overly technical" interpretation that denied the wrongful death claim on the ground that the Administrator was not a proper person to assert the claim under Georgia law.  In doing so, the Court observed that each of the SF-95s submitted to the VA asserted the same claim: the VA's alleged negligence was the proximate cause of Decedent's death, resulting in $5,000,000 in damages.

On August 7, 2014, Defendant moved for reconsideration of the Court's July 21st Order.

## II.    DISCUSSION

### A.    Legal Standard

A district court has discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered.  See Fed. R. Civ. P. 54(b); see also Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000).  The Court does not reconsider its orders as a matter of routine practice.  See LR 7.2 E, NDGa. A motion for reconsideration is appropriate only where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact.  See Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs,  916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).  A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously-filed motion.  Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003); see also Pres. Endangered Areas, 916 F. Supp. at 1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

In its Motion for Reconsideration, Defendant argues that the SF-95 was not sufficient to provide the VA with notice of Plaintiff's wrongful death claim because, under Georgia law, Plaintiff's claim and the Administrator's claim are distinct causes of action, thus requiring separate compliance with the jurisdictional prerequisites of the FTCA.  Defendant argues that <u>Brown</u> does not apply because, in <u>Brown</u>, the Eleventh Circuit considered claims under Florida law and, according to Defendant, under Florida law, wrongful death and personal injury claims arising from a decedent's death are not separate and distinct causes of action.  Because the Administrator's claim for personal injury and Plaintiff's claim for wrongful death are not the "same claim," Defendant asserts, Plaintiff failed to submit an administrative claim within the two-year limitations period required by the FTCA, and the Court therefore lacks jurisdiction to consider Plaintiff's wrongful death claim.  The Court first considers the jurisdictional framework under the FTCA.

B.    <u>Jurisdictional Framework Under the FTCA</u>

The United States, as sovereign, is immune from suit absent a waiver of its immunity.  "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983).  "Sovereign immunity can be waived only by the sovereign and the circumstances of its waiver must be scrupulously

observed, and not expanded, by the courts." Suarez v. United States, 22 F.3d 1064,

1065 (11th Cir. 1994) (citing United States v. Kubrick, 444 U.S. 11 (1979)).

Under the FTCA, the United States waives its sovereign immunity "relating

to tort claims, in the same manner and to the same extent as a private individual

under like circumstances . . . ."  28 U.S.C. § 2674.  The FTCA provides that "an

action shall not be instituted upon a claim against the United States . . . unless the

claimant shall have first presented the claim to the appropriate Federal agency."  28

U.S.C. § 2675(a); see also Suarez, 22 F.3d at 1065 ("A federal court may not

exercise jurisdiction over a suit under the FTCA unless the claimant first files an

administrative claim with the appropriate agency.").  Once the claim has been

finally denied by the agency, or six (6) months have passed since the claim was

submitted to the agency, a plaintiff may bring an action under the FTCA in federal

court. Id.

The claim also must be presented, in writing, to the appropriate agency

"within two years after such claim accrues," and a claimant must file suit within six

(6) months after the agency issues its final decision on the administrative claim.  28

U.S.C. § 2401(b).  "If the claim is not properly presented [under Section 2675]

within the time period, 'it shall be forever barred.'"  Motta ex rel. A.M. v. United

States, 717 F.3d 840, 844 (11th Cir. 2013) (quoting 28 U.S.C. § 2401(b)).

"The congressional purposes of the administrative claim procedure are 'to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States.'"  Brown, 838 F.2d at 1160  (quoting Adams v. United States, 615 F.2d 284, 288 (5th Cir. 1980)).  "By requiring this notice, Congress sought to ensure that the agency is apprised of the circumstances underlying the claim, so that the agency may conduct an investigation and respond to the claimant by settlement or by defense." Id. (citing Adams, 615 F.2d at 289).

To satisfy the notice requirement in Section 2675, "a claimant must (1) give the agency written notice of the claim to enable the agency to investigate and (2) place a value on the claim."  Free v. United States, 885 F.2d 840, 842 (11th Cir. 1989) (citing Adams, 615 F.2d at 289).  Under the FTCA, "a 'claim' is not synonymous with a 'legal cause of action.'"  Brown, 838 F.2d at 1160 (11th Cir. 1988) (internal quotation and citations omitted); see also Murrey v. United States, 73 F.3d 1448, 1151 (7th Cir. 1996) (distinguishing "claim" as short for "claim for relief" under the Federal Rules of Civil Procedure, and a "claim" under the FTCA as the "counterpart of the complaint, rather than of the claim, under the civil rules"). The notice requirement thus does not require a claimant to enumerate each cause of

action or theory of liability in her claim.  See Brown, 838 F. 2d at 1160.  The

Eleventh Circuit has held:

> The statutory purpose of requiring an administrative claim will be
> served as long as a claim brings to the Government's attention facts
> sufficient to enable it thoroughly to investigate its potential liability
> and to conduct settlement negotiations with the claimant.  Accordingly,
> . . . if the Government's investigation of [a] claim should have revealed
> theories of liability other than those specifically enumerated therein,
> those theories can properly be considered part of the claim.

Free, 885 F.2d at 842 (quoting Rise v. United States, 630 F.2d 1068 (5th Cir. 1980))

(internal alterations and quotation marks omitted).  While an agency cannot "turn a

blind eye to facts that become obvious when it investigates" the claim, the agency

need not "undertake an independent search for injuries" or search for all facts "in

voluminous records . . . if the claimant has not pointed to specific sources of

injury."  See Burchfield v. United States, 168 F.3d 1252, 1256-57 (11th Cir. 1999).

The notice requirement of Section 2675 and the limitations period in Section

2401 are jurisdictional and cannot be waived.  Because a claim must comply with

Section 2675 within the limitations period of Section 2401(b), an otherwise timely

claim cannot be amended, after the limitations period, to cure a Section 2675 defect

or to assert new claims on behalf of new claimants.  See, e.g., Dalrymple v. United

States, 460 F.3d 1318, 1326 (11th Cir. 2006) (district court lacked jurisdiction

where claim, filed on last day of two-year limitations period, did not request sum

certain; even though amendment cured substantive defect, it was filed beyond limitations period); <u>Lee v. United States</u>, 980 F.2d 1337 (10th Cir. 1992) (parents' untimely amended claims did not relate back to original, timely claim filed on behalf of daughter, where daughter's original claim did not put government on notice of fact, nature or amount of parents' claim); <u>Manko v. United States</u>, 830 F.2d 831 (8th Cir. 1987) (husband's timely personal injury claim, despite stating he was married, not sufficient notice of wife's loss of consortium claim; allowing wife's untimely amendment to relate back to husband's timely claim would have increased government's exposure and altered approach to settlement); <u>cf.</u> <u>Turner ex rel. Turner v. United States</u>, 514 F.3d 1194, 1201 (11th Cir. 2008) (where parents of child who suffered brain damage filed administrative claim on behalf of child seeking $6 million in damages for child's personal injuries, district court lacked jurisdiction over parents' claims for loss of consortium, which sought $3 million each; administrative claim presented only child's claim for personal injury, and because parents' loss of consortium claims alleged a new injury, parents were required separately to exhaust FTCA administrative claims process).

The FTCA also allows the Attorney General to establish procedures for settling claims made against federal agencies.  <u>See</u> 28 U.S.C. § 2672; 28 C.F.R. §§ 14.1-14.11.  It is well-settled in the Eleventh Circuit that "[t]he presentment

requirements of Section 2675 are distinct from the settlement requirements of section 2672." Free, 885 F.2d at 843.  Notice to the agency under Section 2675 is a prerequisite to filing suit, and "[n]oncompliance with section 2675 deprives a claimant of federal court jurisdiction over his or her claim." Adams, 615 F.2d at 290.  Once notice has been given pursuant to Section 2675, "section 2672 governs agency conduct, including administrative settlement and adjustment of properly presented claims . . . creat[ing] a structure within which negotiations may occur. Noncompliance with section 2672 deprives a claimant only of the opportunity to settle his or her claim outside the courts." Id.  The court in Adams explained:

> A federal court's power to adjudicate a tort claim brought against the United States depends solely on whether the claimant has previously complied with the minimal requirements of the statute.  28 U.S.C. § 2675.  Federal court power does not depend on whether a claimant has successfully navigated his or her way through the gauntlet of the administrative settlement process . . . .

Id. at 292.  "The question whether a plaintiff has presented the requisite section 2675 notice is determined without reference to whether that plaintiff has complied with all settlement related requests . . . ." Id. at 288.

Applying this framework, the Eleventh Circuit in Free considered whether a claimant who files a claim during the statutory period, but who does not meet the settlement requirements of the agency until after the statute of limitations has run, may maintain a lawsuit against the United States pursuant to the FTCA.  Free, 885

F.2d at 842.  In that case, the decedent died on February 16, 1985, while receiving treatment at a VA hospital.  Id. at 841.  On May 21, 1986, the VA received a claim for wrongful death, signed by Daniel Free, the decedent's brother, and listing four other individuals as additional claimants.  Id.  The claim did not indicate the relationship between the claimants and the decedent.  Id.  The VA requested additional information from Free's attorney, including whether he had been appointed administrator of decedent's estate.  Id.  In response, Free's attorney stated that he believed all listed claimants, as the decedent's siblings, would have a cause of action for wrongful death under Georgia law.  Id.  The VA again requested evidence that Free had been appointed administrator of the estate, but received no response.  Id.  On May 29, 1987, the VA denied the claim.  Id.  On October 21, 1987, Free's attorney submitted to the VA an "Amendment for Reconsideration," which showed that Free had been appointed temporary administrator of the decedent's estate on October 20, 1987, after the two-year limitations period expired. Id.  On February 9, 1988, the VA denied the request for reconsideration, finding the claim barred by the statute of limitations.  Id.

Free filed his complaint, arguing that he complied with Section 2675 by giving notice to the VA about the incident and stating a value for the claim within the statutory period.  Id.  The government moved to dismiss for lack of subject

matter jurisdiction.  Id.  The government argued that to satisfy Section 2675, the person entitled to settle the claim must present the claim to the agency within the statutory period, and that the wrongful death claim submitted by decedent's siblings was therefore improper because Georgia law required the wrongful death action to be brought by a representative of the decedent's estate.  Id.  The district court denied the government's motion, stating that "notwithstanding Free's failure to meet the presentment requirements of the VA, the claim was not barred because it met the jurisdictional prerequisites of 28 U.S.C. § 2675."  Id. [5]

On interlocutory appeal, the Eleventh Circuit held that Free satisfied the jurisdictional requirement of Section 2675 and had standing to bring the action pursuant to the FTCA.  The court expressly rejected the government's arguments that only a person who is entitled to recover under state law may properly file a claim for purposes of the FTCA, and that since notice of the administrator's claim was not received until after the limitations period had run, the claim was barred.  Id. at 842.  The court found that Free's administrative claim put the government on notice to investigate the circumstances of the decedent's death and made it aware of

---

[5]    The government appears to have relied on Free's failure to comply with the agency's settlement requirement that a claim be presented by the administrator of a decedent's estate, or the person entitled under state law to assert the claim.

the amount of the claim, and that the government had sufficient information to investigate and either settle or defend the claim.  Id. at 843.

Other courts have also held that there is no jurisdictional requirement that an administrative claim be filed by the "proper party."  In Knapp v. United States, 844 F.2d 376 (6th Cir. 1988), the Sixth Circuit held that the failure to present a survival or wrongful death claim under the FTCA by the person authorized by state law does not defeat the district court's subject matter jurisdiction.  See also Dawson ex rel. Estate of Dawson v. United States, 333 F. Supp. 2d 488 (D.S.C. 2004) (that claimant was not legal representative of patient's estate at time she initially filed administrative claim did not bar complaint); Zywicki v. United States, No. CIV.A. 88-1501-T, 1991 WL 128588, *2 (D. Kan. June 20, 1991) (court had jurisdiction over action where plaintiff's claim satisfied the minimal notice requirements of Section 2675(a) and government did not suggest that plaintiff's technical failure to comply with 28 C.F.R. § 14.3(c) impeded its ability to investigate claim).

The question in this case, then, is whether a claim was filed, within the two year limitations period, that was sufficient to "(1) give the [VA] written notice of the [wrongful death] claim to enable the [VA] to investigate and (2) place a value on the claim."  See Free, 885 F.2d at 842.

C.    Analysis

Here, the July 2, 2012, SF-95 filed by the Administrator on behalf of the
Estate asserted that Decedent suffered personal injury, and ultimately death, as a
result of the VA's alleged negligence.  The SF-95 detailed the time, place, and
manner of Decedent's death, the treatment he received at the VA Medical Center,
and stated, in the "Personal Injury/Wrongful Death" section, that "VA negligence as
described caused the death of Brian R. Campeau, resulting in economic and
non-economic losses to his Estate," totaling $5,000,000.  (SF-95 at 1).  The SF-95
contained all of the information that the VA needed to investigate the treatment
Decedent received at the VA Medical Center, and put the VA on notice of the
potential theories of liability and all of the facts upon which liability could be
asserted based on Decedent's death.  The VA's investigation of the facts alleged in
the SF-95 should have included—and it appears did include—investigation of
whether "any negligent or wrongful act or omission on the part of a [VA] employee
. . . caused personal injury to, *or resulted in the death of [Decedent]* at the [] VA
Medical Center following elective ECT treatment."  (April 15, 2013, Letter at 1).
The SF-95 put the VA on notice that the VA's alleged negligence was the
proximate cause of Decedent's pain and suffering, and ultimately his death, and
resulted in $5,000,000 in damages.  See Rise, 630 F.2d at 1071-72 ("[I]f the

Government's investigation of [an administrative] claim should have revealed theories of liability other than those specifically enumerated therein, those theories can properly be considered part of the claim.").[6]

Defendant argues that Plaintiff was required to separately meet the jurisdictional prerequisites of the FTCA because, under Georgia law, the Administrator's personal injury claim and Plaintiff's wrongful death claim are separate and distinct claims and the parties to the claims are not the same. Defendant argues that Plaintiff thus suffered a "different personal injury," and Brown, because it applied Florida law, does not apply.  The Court disagrees.

In Brown, the plaintiff submitted an administrative claim to the VA for personal injuries he suffered as a result of medical malpractice committed at the Miami VA Hospital.  838 F.2d at 1158.  In March 1983, eight months after he filed his administrative claim, the plaintiff filed his complaint in federal court asserting medical malpractice under the FTCA.  Id.  The plaintiff died before the FTCA action could be tried.  Id. at 1159.  On February 1, 1984, the plaintiff's attorney submitted to the VA an administrative claim for wrongful death.  Id.  The next

---

[6]     The Court notes that the VA also knew the identity of the "proper party" under Georgia law to assert the wrongful death claim because the SF-95 stated that Decedent was married and that Plaintiff was his spouse, and the two representation agreements submitted with the SF-95 shows that Counsel represent both the Administrator and Plaintiff.

week, the plaintiff's attorney moved in the FTCA action to substitute as the party

plaintiff Dewy Brown, the personal representative of the plaintiff's estate, and to

amend the complaint to assert a claim for wrongful death under Florida law.  Id.

The government opposed both motions, arguing that the representative failed to

satisfy the jurisdictional prerequisites of Section 2675(a).  Id.  The district court

held that Dewey Brown could rely on the plaintiff's administrative claim, observing

that "'[w]hile the measure of any damages recovered in this case under the

Wrongful Death Act will vary from those potentially recoverable under the original

malpractice claims, the underlying 'claims' are identical, and administrative

proceedings on them have since been exhausted.'"  Id. at 1159-60.

On appeal, the government argued that the district court lacked jurisdiction

over the wrongful death claim because Dewey Brown did not file a claim with the

VA prior to bringing suit.  Id. at 1160.  The Eleventh Circuit held:

> [T]he claim filed by [the decedent] provided the VA with the facts
> necessary to conduct a full investigation of the underlying
> circumstances.  Requiring [Dewey Brown] to exhaust the
> administrative claim procedure again would serve no useful purpose.
> It is unlikely that the agency would conduct a second investigation or
> otherwise act any differently.

Id. at 1161.  The Eleventh Circuit observed that "[t]he government's ability to settle

claims will not be hampered by permitting plaintiffs to forgo a second

administrative claim in wrongful death actions," including because, under Florida

law, "a wrongful death action depends on the same proof of negligence needed to maintain a personal injury action," and so "[t]he death of a claimant therefore does not alter the government's analysis of the strengths and weaknesses of its case and accordingly its settlement evaluation." Id. n.8.

The Eleventh Circuit also rejected the government's argument that the district court lacked subject matter jurisdiction because a "new, independent cause of action arose when [the plaintiff] died." Id. The Eleventh Circuit stated that "[a]lthough a Florida wrongful death action is *clearly distinct* from a personal injury action, liability of a defendant in a wrongful death action is based on the negligent or wrongful act which injures the decedent," and thus "[t]he death is not the operative fact upon which liability rests." Id. (emphasis added) (internal quotation and citations omitted). In holding that the district court properly exercised subject matter jurisdiction, the Eleventh Circuit reasoned:

> A new administrative claim is unnecessary for a wrongful death action because *while a different legal injury is suffered, both actions are based on the same injury in fact.* Although a new cause of action accrued at the time of [the plaintiff's] death, the United States' liability is based on the same facts presented in [the plaintiff's] administrative claim.

Id. (emphasis added).

This close reading of Brown shows that Florida law, like Georgia law, considers personal injury and wrongful death claims as separate causes of action.

That is to say, the separate nature of the causes of action is not central to an analysis of the FTCA notice requirements and the Court's subject-matter jurisdiction. The Eleventh Circuit's jurisdictional analysis in Brown focused on the underlying factual basis—the decedent's death—and concluded that the administrative claim when filed satisfied the purpose behind the notice requirement. Id. at 1161. The Eleventh Circuit took a practical view of the notice requirements of an administrative claim, noting that "a new administrative claim is unnecessary for a wrongful death action because while a different legal injury is suffered, both actions are based on the same injury in fact." Id. What is important is the injury in fact that supports a cause of action based on that injury and whether the agency had notice of the injury.

Here, like in Brown, Defendant's liability, if any, for wrongful death and personal injury are based on the same set of facts asserted in the SF-95—the alleged negligent medical treatment Decedent received at the VA Medical Center. Although wrongful death and survivorship claims are *separate and distinct causes of action* under Georgia law, for purposes of the FTCA, "a 'claim' is not synonymous with a 'legal cause of action,'" and Plaintiff's claim for wrongful death necessarily depends on the same proof of negligence as the Administrator's claim for personal injury. See Brown, 8387 F.2d at 1160; Dion v. Y.S.G. Enters., Inc.,

766 S.E.2d 48, 51 (Ga. 2014) ("Under Georgia law a suit for wrongful death is derivative to the decedent's right of action.  A survivor cannot recover for the decedent's wrongful death if the decedent could not have recovered in his or her own right."); Eldridge's Ga. Wrongful Death Actions, § 2:2 (4th ed.) (wrongful death claim "is derivative from the breach of duty owed to the decedent").  The difference between the causes of action for wrongful death and for personal injury is the measure of damages, and the party with standing to bring an action to recover them.[7]  The negligent medical treatment alleged in the SF-95 underlies both the pain and suffering, and wrongful death, claims.  See Mixon v. United States, -- F. Supp. 3d --, 2014 WL 4924474, at *4 (M.D. Ga. Sept. 30, 2014) (where claim submitted to VA by wife of decedent listed time and general circumstances of death and sought $5 million for wrongful death, court had jurisdiction to consider pain and suffering claim because alleged medical malpractice, which was evident from SF-95, underlay pain and suffering claim).[8]  It is clear that Plaintiff's wrongful

---

[7]     Plaintiff, as Decedent's surviving spouse, can assert a claim for wrongful death based on the care Decedent received at the VA Medical Center, and the measure of damages would be the full value of Decedent's life, from Decedent's perspective.  The Administrator can assert a claim for personal injury based on the care Decedent received at the VA Medical Center, and could recover for the Estate damages would be Decedent's pain and suffering before death.  See Complete Auto Transit, Inc. v. Floyd, 104 S.E.2d 208 (Ga. 1958).

[8]     A wrongful death claim and a personal injury claim are not, as Defendant asserts, "different personal injuries" so as to require Plaintiff's separate compliance

death claim and the Administrator's personal injury claim are not the "same claim." They are, however, based on the same set of facts detailed in the SF-95.

The SF-95 was not required to be submitted by the person with standing under Georgia law to bring a lawsuit for Decedent's wrongful death, and it was not required to recite every possible theory of liability based on the treatment Decedent received and his death.  See Free, 885 F.2d at 842-43.  That the Administrator did not have standing under Georgia law to assert a wrongful death claim does not change that the SF-95 put the VA on constructive notice that the VA's alleged

---

with the jurisdictional prerequisites of the FTCA.  Unlike a loss of consortium claim, which is asserted separately by a non-injured spouse to recover for his or her loss of the companionship and services of the injured spouse, a wrongful death claim under Georgia law "is derivative from the breach of duty owed to the decedent" and the "survivors' dependency and economic loss are not part of the elements of loss because the damages are measured from the decedent's perspective only."  See Eldridge's Ga. Wrongful Death Actions, §§ 2:2, 6:5 (4th ed.); see also Brown, 838 F.2d at 1161 n.9 (claimant required "to meet the jurisdictional requirements if a different personal injury were suffered," and using as an example a claim for loss of consortium); contrast Turner, 514 F.3d at 1201 (where parents of child who suffered brain damage filed administrative claim on behalf of child seeking $6 million in damages for child's personal injuries, district court lacked jurisdiction over parents' claims for loss of consortium, which sought $3 million each; administrative claim presented only child's claim for personal injury, and because parents' loss of consortium claims alleged a new injury, parents were required separately to satisfy FTCA jurisdictional requirements); Dalrymple, 460 F.3d at 1325 ("[B]ecause each claimant must independently satisfy the prerequisite for filing suit under the FTCA [including] by providing a sum certain claim, we conclude that the other ninety-seven claimants who filed a sum certain claim do not satisfy the statutory prerequisite for the dismissed plaintiffs who omitted a sum certain in their claims.").

negligence was the proximate cause of Decedent's pain and suffering, and

ultimately his death, and resulted in $5,000,000 in damages.  See Rise, 630 F.2d at

1071-72 ("[I]f the Government's investigation of [an administrative] claim should

have revealed theories of liability other than those specifically enumerated therein,

those theories can properly be considered part of the claim.").  The SF-95, which

was filed within the two-year limitations period, was sufficient to put the VA on

notice to investigate the circumstances of Decedent's death and it made the VA

aware of the amount of damages claim based on Decedent's death.  See Free, 885

F.2d at 842.  The Court concludes that it has subject matter jurisdiction over

Plaintiff's wrongful death claim presented in this action. [9]

---

[9]     Although Section 2401(b) also requires a claimant to file suit within six
months after the agency issues its final decision on the administrative claim,
Defendant has not raised this as a basis for dismissal of Plaintiff's wrongful death
claim, likely because Defendant's position consistently has been that the VA did not
have notice of Plaintiff's wrongful death claim before it received Counsel's
April 23, 2013, Letter and the Second Amended SF-95.

        In view of the Court's finding that Plaintiff can rely on the SF-95 to support
that the Court has jurisdiction over her wrongful death claim, the Court notes that
Counsel's April 23, 2013, Letter and the Second Amended SF-95 appear to be a
request for reconsideration of the April 15, 2013, Denial Letter, in which the VA
denied the wrongful death claim on the basis that it was not the presented by the
"proper party."  See Free, 885 F.2d at 842; see also Apr. 15, 2013 Denial Letter ("If
a request for reconsideration is made, VA shall have six months from receipt of that
request during which the option to file suit in an appropriate federal court under 28
U.S.C. [§] 2675(a) is suspended.").  Counsel's April 23, 2013, Letter and the
Second Amended SF-95 simply restate what the VA already knew—or should have
known—from its investigation based on the SF-95: that the VA's alleged

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Reconsideration

[27] is **DENIED**.


**SO ORDERED** this 23rd day of March, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

negligence was the proximate cause of Decedent's personal injuries, and ultimately his death; that the claimed amount of damages was $5,000,000; and that Plaintiff was Decedent's surviving spouse.  Because Plaintiff filed her Complaint on November 7, 2013—less than six months after the VA declined, in its May 17, 2013, Letter, to consider the Second Amended SF-95 in conjunction with any prior claim—the Court concludes that Plaintiff complied with the six-month filing requirement of Section 2401(b).  See 28 U.S.C. § 2401(b); 28 C.F.R. § 14.9(b) (prior to commencement of suit and prior to expiration of 6-month period provided in 28 U.S.C. § 2401(b), claimant may file request with agency for reconsideration of final denial of claim; agency has 6 months from date of filing to make final disposition of claim and option to file suit under 28 U.S.C. § 2675(a) shall not accrue until 6 months after filing request for reconsideration); Berti v. V.A. Hosp., 860 F.2d 338, 340 (9th Cir. 1988) (request for reconsideration to agency "prevents the agency's denial from becoming a final denial for purposes of 28 U.S.C. § 2401(b) and tolls the six-month limitation period until either the VA responds or six more months pass"); Roman-Cancel v. United States, 613 F.3d 37 (1st Cir. 2010) (same); see also Calhoun v. United States, No. 3:09cv268, 2010 WL 3277652, at *6-7 (N.D. Fla. June 30, 2010) (Six-month period for filing FTCA action in district court after final denial of claim by agency is tolled by timely request for reconsideration by agency that denied claim).